IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JEFFREY R. LEWIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| MESILLA VALLEY TAINING | ) JUDGE |
| INSTITUTE, LTD., A TEXAS LIMITED | ) |
| PARTNERSHIP, d/b/a MESILLA | ) MAGISTRATE |
| VALLEY TRANSPORTATION, | ) |
| | ) |
| Defendant, | ) |

## COMPLAINT

COMES NOW Plaintiff, by and through counsel, and submits his Complaint against Defendant. Plaintiff would allege as follows:

1. Plaintiff is a citizen and resident of Davidson County, Tennessee.

2. Defendant, Mesilla Valley Training Institute, Ltd., a Texas Limited Partnership, is a for-profit entity and can be served through its Registered Agent Luis Garcia, 3750 Stewarts Lane, Nashville, Tennessee 37218.

### JURISDICTION

3. All of the events complained of herein occurred in this Judicial District and the defendant is an entity contained herein, which gives rise to the venue in this district, under 28 U.S.C. § 1391(b).

4. This Court has jurisdiction according to 28 U.S.C. §§ 451, 1331, 1337 and 1343. The Court has jurisdiction of the lawsuit in that it arises under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. 621.

## FACTS

5. Plaintiff was hired with defendant in March 2009, as a Diesel Mechanic at the Nashville location. He was later promoted to Lead Mechanic and Shift Leader.

6. On April 17, 2013, a position for Shop Supervisor was posted through the companies email list.

7. Plaintiff and two of his co-workers, Jeffrey Kerr ("Mr. Kerr") and Nick Jenkins ("Mr. Jenkins"), applied for the position.

8. During the next week, Mr. Kerr and Mr. Jenkins were both interviewed for the available position however, Plaintiff was not.

9. That week, Plaintiff contacted Rebecca Orozco ("Ms. Orozco") in the Human Resources office to inquire about his application.

10. Ms. Orozco told Plaintiff that his resume was thrown away because she thought it was for Mr. Kerr.

11. Plaintiff resubmitted his resume and application and received an interview.

12. After waiting approximately six weeks, Plaintiff, Mr. Kerr, and Mr. Jenkins were called into the Human Resources office and told that the position would not be filled at that time.

13. During this meeting, Mr. Kerr was offered the position of Service Manager and Mr. Jenkins was offered the position of Shop foreman.

14. The positions of Service Manager and Shop Foreman were never posted as available, nor had they ever existed in the company before. Mr. Kerr and Mr. Jenkins being placed in these positions, made them both salaried employees and Plaintiff's boss.

15. Mr. Kerr and Mr. Jenkins are both younger than Plaintiff and were both trained by Plaintiff. Neither of them have the qualifications nor experience that Plaintiff has.

16. In July 2013, Boyd Jones ("Mr. Jones"), owner, was at the shop. While he was there, Plaintiff asked him why the posted position for Shop Supervisor was not filled, but two positions that had never previously existed were never posted, but were. Mr. Jones told Plaintiff that he would get back to him with an answer to his question however, he never did.

17. On August 8, 2013, three leaders of the Service Department were at the Nashville location. Plaintiff was in a meeting along with the three leaders.

18. During this meeting, Plaintiff asked the leaders the same question that he had previously asked Mr. Jones in July. Plaintiff was given the same response during this meeting that he was given by Mr. Jones. He has still yet to hear anything.

19. In January 2014, Plaintiff was working over 40 hours a week on a six day schedule. In February 2014, Plaintiff's schedule was reduced to a flat 40 hours a week on a five day schedule.

20. On March 20, 2014, at approximately 8:00 a.m., Plaintiff was given a work order by Mr. Kerr. This work order required Plaintiff to move a truck from the parking lot into the shop.

21. When Plaintiff opened the door to the truck, he realized the driver was asleep. Due to Defendant's policy that prohibits employees from waking up drivers who are on their ten hour breaks, Plaintiff went back in to Mr. Kerr to let him know why he could not bring the truck into the shop.

22. When Plaintiff told Mr. Kerr that the driver was asleep, Mr. Kerr told yelled, "wake that mother f***** up!"

23. At the time Mr. Kerr was yelling at Plaintiff, shop manager Ron Knowles ("Mr. Knowles") was walking by. Mr. Knowles told Plaintiff to follow him to the office.

24. When Mr. Knowles and Plaintiff arrived in his office, he told Mr. Knowles that the reason he could not complete the work order, was because there was a driver asleep in his truck during his ten hour break. Plaintiff was told the work order to Mr. Kerr.

25. Approximately ten minutes after returning the work order to Mr. Kerr, Plaintiff was called back into Mr. Knowles office.

26. During this meeting, Mr. Knowles told Plaintiff that he had no reason to curse at him the way he did in their previous meeting. He also told Plaintiff that the way Mr. Kerr did his job was none of his business because he was unaware of all of the extra duties that had been assigned to him.

27. Mr. Knowles also told Plaintiff that if he did not like the way that things were being done at "this company," he needed to quit.

28. As Plaintiff was leaving Mr. Knowles office, Mr. Knowles told Plaintiff that the best thing he could do would be to quit because he was responsible for each and every bad attitude in the shop.

29. After this meeting, the discrimination and harassment became so severe, Plaintiff felt he had no other choice than to find employment elsewhere.

30. On March 31, 2014, Plaintiff resigned from his position as Lead Mechanic with Defendant.

## CAUSES OF ACTION

### I. Age discrimination

31. Plaintiff incorporates herein by reference the factual allegations outlined in paragraphs 1 through 30.

32. Plaintiff alleges that the intentional acts and omissions by the Defendant as described herein constitute violations of the Age Discrimination in Employment Act, which entitles him to compensatory damages, reinstatement, back pay, front pay, and attorney's fees and costs.

### II. Retaliation

33. Plaintiff incorporates herein by reference the factual allegations outlined in paragraphs 1 through 30.

34. Plaintiff alleges that the intentional acts and omissions by the Defendant as described herein constitute adverse employment actions in retaliation for her grievances and complaints of a hostile working environment, which entitles him to compensatory damages, reinstatement, back pay, front pay, and attorney's fees and costs.

35. As a result of Defendant's intentional actions, Plaintiff has suffered a loss of income and benefits and is entitled to an award of compensatory damages.

**WHEREFORE,** Plaintiff prays:

1. For a jury to be empaneled and a judgment of compensatory damages to include front pay, back pay and emotional suffering;

2. Punitive damages;

3. Attorney's fees and the cost of litigation to include expert fees;

4. Damages for humiliation and embarrassment;

5. All other remedies and injunctions as are necessary and proper to eliminated the discriminatory practices of Defendant;

6. A judgment against Defendant for prejudgment interest; and

7. Such other relief as this Court deems proper.

Respectfully submitted,

**ALLMAN & ASSOCIATES**

_____
Andy L. Allman, BPR No. 17857
131 Saundersville Road, Suite 110
Hendersonville, Tennessee 37075
Tel: (615) 933-0110
Fax: (615) 265-8766
andy@andylallman.com